In the Matter of the Judicial Settlement of the Account of Proceedings of DUDLEY T. LYALL and Another, as Trustees under the Last Will and Testament of JAMES LYALL, Deceased, Appellants.

ALDEN P. LYALL and Others, Infants, by MAXWELL S. HARRIS, Special Guardian, Respondents.

First Department, March 20, 1925.

Trusts — testamentary trusts — trustees made unauthorized investments, formed corporation, of which they took one-half of stock as trustees and loaned trust funds to corporation — trustees' account surcharged with money improperly invested — order directing trustees to convert unlawful investments into lawful securities or reimburse estate to amount of money invested and loaned, and on such reimbursement to transfer to themselves all unlawful securities, was proper — order should have directed that upon payment of money loaned to corporation, trustees should assign to themselves individually claims of estate against corporation.

In proceedings to judicially settle the account of testamentary trustees, the surrogate properly surcharged the account of the trustees with sums invested in securities, not authorized by law or by the will, with moneys loaned to a corporation, which they formed, and of whose stock they purchased one-half as trustees, and with the amount of money spent in the purchase of said stock.

The order properly directed that if the trustees failed to convert the investments in unlawful securities into legal investments, they should be surcharged with the full amount thereof, and upon payment they would be individually vested with the title to the securities; and that upon compliance with directions as to return of investments held by the corporation which they formed, they would be individually vested with the title to one-half the capital stock. But the order should have provided also that, upon the payment of the claims of the estate against the corporation for money loaned, the trustees would be entitled to an assignment to themselves individually of the claims against the corporation.

APPEAL by Dudley T. Lyall and another, as trustees, from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said court on the 24th day of March, 1924.

This is a proceeding for the judicial settlement of the account of the trustees. The special guardian filed objections to the account. The surrogate sustained the objections. The grounds of the objections are:

(a) That the trustees made certain investments in stock which were unauthorized either by the will of the testator or by law, which stock they afterwards sold at a loss. They were surcharged in the decree with $222.82, the amount of the loss sustained.

(b) That the trustees made similar unauthorized stock investments which they have retained unsold in an amount aggregating

27

First Department, March, 1925.                    [Vol. 212

$45,831.42. The decree directed that these unlawful investments be converted into lawful investments, and that should a loss be sustained thereby, the trustees be surcharged with the amount of such loss, and that if they should fail to make such conversion into lawful investments, they be surcharged with the full amount of the unlawful investments, and that upon payment of such amount, they be individually vested with title to the securities representing the unlawful investments.

(c) In the lifetime of James Lyall, the testator, he and his brother William Lyall were owners in common of a leasehold of a building and the premises known as 536–546 West Twenty-third street, Manhattan borough. The leasehold was one for twenty-one years at a time with indefinite renewal privileges. Upon the death of the testator his estate and his brother William became the owners in common of the leasehold.

In or about the year 1915 the trustees herein and William Lyall made an exchange of the Twenty-third street leasehold for other property. The property received in exchange was the following:

(1) Four four-story apartment houses known as Nos. 4206–4220 Fifteenth avenue, Brooklyn borough.

(2) Two small brick houses known as Nos. 306 and 308 West Thirty-fifth street, Manhattan borough.

(3) A purchase-money mortgage for $1,600 on the Twenty-third street leasehold; and

(4) A mortgage for $1,000 on lands in Duane, Franklin county, N. Y.

At or about the time of said exchange, the trustees and William Lyall formed a corporation known as the Scotia Realty Co., Inc., with a capital of fifty shares of the par value of $100 each, twenty-five of which shares were issued to said trustees and the other twenty-five to said William Lyall.

The title to the two pieces of real estate given in exchange for the leasehold was not taken in the names of said trustees and said William Lyall, but instead was taken in the name of said Scotia Realty Co., Inc., as was the title to the purchase-money mortgage for $1,600, while the mortgage for $1,000 on the property in Duane was assigned by the holders thereof directly to the broker who brought about the exchange, as part of his commissions.

The purchase-money mortgage for $1,600 on the leasehold was later paid in full to the Scotia Realty Co., Inc.

When the mortgage on the Thirty-fifth street, New York property became due, the Scotia Realty Co., Inc., finding that the property was not a paying proposition, and believing that its value was less than the mortgage thereon, accrued interest and other charges, and the mortgagee being about to foreclose the mortgage, conveyed

the property to the mortgagee without receiving any consideration for the conveyance.

In or about April, 1920, the Scotia Realty Co., Inc., sold the Brooklyn property for $140,000. There was at that time a first mortgage on the property of $70,000 subject to which it was sold, and a second mortgage of $18,000 which latter mortgage was paid off upon the closing of the transaction. The Scotia Realty Co., Inc., received from the purchaser upon the sale a purchase-money mortgage for $42,000 and net cash of $5,430. Subsequently $9,000 was paid in reduction of this purchase-money mortgage, reducing its principal to the sum of $33,000.

The ultimate owners of the leasehold property which had been exchanged as hereinbefore set forth, defaulted both in the payment of the interest on the mortgage thereon, subject to which it had been exchanged, and of the ground rent, and inasmuch as the estate herein and that of William Lyall, the testator's brother, who had died some time before, were liable both on the bond of said mortgage and for the ground rent under the lease, the trustees herein and the representatives of the estate of William Lyall, being apprehensive of a deficiency for which they would be liable, arranged to pay off the mortgage on the leasehold, accrued interest and other charges, and to take an assignment of the lease. The amount required for that purpose was $34,975, one-half of which, to wit, $17,487.50, was advanced by the trustees herein and a like amount by the representatives of the estate of William Lyall. These sums were advanced as loans to the Scotia Realty Co., Inc.

The trustees herein in conjunction with the representatives of the estate of William Lyall caused said leasehold to be transferred, free of all liens, to the 540 Realty Corporation which had been organized for the purpose of acquiring the leasehold and managing the property by one Daniel G. Brassil and one Otto Lorence. In exchange for the transfer of the said leasehold to the said 540 Realty Corporation, the latter issued to the Scotia Realty Co., Inc., 340 shares of the preferred stock of the former and its certificate of indebtedness for $455.80 which were intended to cover the aforesaid sum of $34,975 advanced in equal amounts by the two estates.

It appears that the trustees herein had from time to time made loans to the Scotia Realty Co., Inc., aggregating $26,987.50, on account of which the Scotia Realty Co., Inc., repaid $7,000.

The surrogate held that the acts of the trustees in so far as they related to the transactions with the Scotia Realty Co., Inc., and the 540 Realty Corporation above outlined, were unauthorized, and in the decree entered upon his decision directed the trustees to procure to be turned over to the estate all sums of money which

they had loaned, advanced or otherwise paid to the Scotia Realty Co., Inc., and all moneys and other property which, but for the intervention of the Scotia Realty Co., Inc., would have gone directly to the estate, to wit, one-half of the principal of the purchase-money mortgage for $1,600 which was given to the Scotia Realty Co., Inc., on the exchange of the leasehold property, one-half of the net amount of cash received by the Scotia Realty Co., Inc., on the sale of the Brooklyn property, and one-half of the principal sum collected by Scotia Realty Co., Inc., on account of the purchase-money mortgage for $42,000 taken back by it on the sale of the said Brooklyn property; less, however, such sums as had been repaid by way of principal by said Scotia Realty Co., Inc., to the trustees for and on behalf of the estate herein; and also that the trustees procure to be turned over to the estate an assignment of a one-half interest in the aforesaid purchase-money mortgage on the Brooklyn property, so that the estate should have a one-half interest in the balance remaining unpaid thereon; and that upon the failure of the trustees to comply with the foregoing directions, they be surcharged with the amount of each of said items with respect to which they shall fail to comply; and that upon their full compliance therewith, they be individually vested with title to the one-half of the capital stock of the Scotia Realty Co., Inc., now held by them for the estate.

From the decree entered upon the surrogate's decision the trustees have appealed to this court.

*Beekman, Bogue, Clark & Griscom* [*William L. Bainton* of counsel], for the appellants.

*Maxwell S. Harris,* for the respondents.

BURR, J.:

While from the record before us we are convinced (and the special guardian concedes) that the trustees acted in good faith and for what they regarded to be the best interests of the estate in all these transactions, we are agreed that the investments made by the trustees in the securities enumerated under the heading "Sales of reinvestments of proceeds of sale of Brighton Mills stock" in Schedule A, section 2, of the account, and those enumerated in Schedule C of the account, are unauthorized either by law or by the will of the testator, and likewise, that the formation of the Scotia Realty Co., Inc., and the holding and handling by it of the property of the estate were unauthorized. The ruling of the surrogate as to these matters was proper.

The decree properly provided that if the trustees fail to convert the investment in the unlawful securities into legal investments

as therein provided the trustees be surcharged with the full amount thereof and upon payment thereof they be individually vested with the title to said securities. The decree further provides: "that upon their full compliance with the foregoing directions [as to the return of the investments held by the Scotia Realty Co., Inc.] they [the trustees] be individually vested with the title to the one-half of the capital stock of the Scotia Realty Co., Inc., now held by said trustees for the estate herein." The stock, however, does not represent all the claims against the Scotia Realty Co., Inc. It appears from the account filed by the trustees that on November 30, 1921, the Scotia Realty Co., Inc., owed the estate a balance due for money loaned of $32,487.50. Inasmuch as the trustees are ordered to pay into the estate the money loaned to the Scotia Realty Co., Inc., remaining unpaid, they are entitled to the claims of the estate against the Scotia Realty Co., Inc., for money loaned.

The trustees are entitled to a decree authorizing them to transfer to themselves individually all of the claims of the estate against the Scotia Realty Co., Inc., when they shall have complied with the decree and paid the surcharges.

Where a trustee has invested the trust estate in unauthorized securities a decree charging him with the amount so invested should transfer such securities to him to enable him to make payment out of the proceeds, as otherwise he might be rendered incapable of complying with the decree.

So also where a trustee invested an estate in mortgages or real estate without any authority in the will, a decree charging him with the cash amount of such investment should vest title to it in him individually so that he may, if necessary, make use of the mortgages in order to comply with the decree. (*Matter of Ryer*, 94 App. Div. 449, 451, 452; affd., 180 N. Y. 532; *Matter of Maitland*, 81 App. Div. 633; affd., 178 N. Y. 612; *Matter of Niles*, 113 id. 547, 553, 554; *Furniss* v. *Zimmerman*, 90 Misc. 138, 141, 142.)

The decree should be modified by inserting a clause therein as follows: "The trustees are authorized and empowered to transfer to themselves individually all of the claims of the estate against the Scotia Realty Co., Inc., upon compliance by said trustees with all of the directions and requirements of the decree and paying the amounts surcharged against them under the terms thereof," and, as so modified, the decree should be affirmed, with costs to both parties payable out of the trust estate.

DOWLING, MERRELL, McAVOY and MARTIN, JJ., concur.

Decree affirmed, with costs to both parties payable out of the trust estate.