## AGNES JOHNSON v. JOHN ANDERSON AND ANOTHER.[1]

November 10, 1927.

No. 26,338.

**When jury may find implied waiver of notice of dishonor.**

[1] When the indorsers of a certificate of deposit issued by a bank, with full knowledge of the omission of due presentment and notice of dishonor, unconditionally promise to pay the obligation or acknowledge themselves bound, the jury may find implied waiver of notice of dishonor.

**Assignments of error.**

[2] The assignments of error upon the charge do not reach any vital defect therein.

Appeal and Error, 3 C. J. p. 843 n. 67.
Bills and Notes, 8 C. J. p. 709 n. 12; p. 1056 n. 82; p. 1080 n. 78.
Trial, 38 Cyc. p. 1670 n. 3; p. 1785 n. 90.

Action in the district court for Rock county against the indorsers of a certificate of deposit. There was a verdict for the plaintiff, and defendants appealed from an order, Nelson, J., denying their motion for a new trial. Affirmed.

*Canfield & Michael,* for appellants.

*Charles Dealy,* for respondent.

HOLT, J.

The indorsers of a certificate of deposit appeal from the order denying a new trial, after verdict for plaintiff.

The complaint was so drawn that if the proof warranted reformation of the indorsement by inserting a guaranty of payment above the signatures a recovery could be had, or the same result would follow if the evidence should show a waiver of presentment and notice of dishonor. After the evidence was in, the sole issue submitted to the jury was waiver of notice of dishonor.

[1]Reported in 216 N. W. 237.

The certificate in suit was issued by the Farmers State Bank of Steen, Minnesota, and indorsed by defendants and the bank's cashier, one Crangle, since deceased. Defendant Paulsen was the president of the bank. Defendant Anderson was an uncle of plaintiff and the owner of some shares of stock in the bank. The assignments of error challenge the sufficiency of the evidence to sustain the waiver upon which the verdict rests, and also certain portions of the court's charge.

There was no express waiver of notice of dishonor, and therefore we must look for evidence as to implied. Plaintiff testified to a conversation with defendant Anderson shortly after the bank failed, and likely before the maturity of the certificate, that he would "stand for" her money. There was a meeting of the creditors of the bank and the bank officials to see whether arrangements could be made to open the bank or to compromise with the creditors. This was probably after the certificate fell due. Plaintiff was present. When the meeting was over plaintiff had a talk with defendant Paulsen, according to plaintiff's testimony, and this occurred:

"Q. You may go ahead and tell what you said, and what Paulsen said, in Mr. Canfield's office, about the money you had in the bank, and about paying it.

"A. I asked him about it, and he said that he was going to see that I got all of my money; and going to get every cent of interest too, he said."

Her testimony as to defendant Anderson's promise to pay, made after the bank failed and both before and after the maturity of the certificate, was stronger and was corroborated by another witness.

Plaintiff was a young girl, apparently of limited knowledge of business and unable clearly to express herself. This money was an inheritance from her father. She had it in the bank in the form of a certificate of deposit. Someone desired to borrow it. The bank officials evidently learned that there was danger of not being able to retain the use of plaintiff's money. So the cashier and the president of the bank, defendant Paulsen, came in a car to de-

fendant Anderson's farm, where plaintiff was living, and requested her to accept a renewal certificate of deposit. And she testified that she agreed to do so if Anderson, Paulsen and the cashier would "stand" back of the bank, or "stand for the money if the bank was broke;" that they agreed and indorsed the certificate, the one in suit.

Though due presentment was pleaded, the proof left the time thereof uncertain. No written notice of dishonor was given as required by law to fix liability upon the indorsers. No feature was made of presentment at the trial, the court submitting only the issue of waiver of notice of dishonor by defendants.

Section 109 of the uniform negotiable instruments act (G. S. 1923, § 7152) provides:

"Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied."

Implied waiver may be found from the fact that, with knowledge that due presentment has not been made or notice of dishonor given, the indorser has promised to pay the obligation or has acknowledged that he is still obligated thereon. Notwithstanding the denial by the defendants, we think the jury could find that they, with full knowledge of the omission of due presentment and notice of dishonor, agreed to pay or make good to plaintiff the money due her on the certificate. Lieberman v. Fox, 160 Minn. 449, 200 N. W. 468; Whitaker v. Morrison, 1 Fla. 25, 44 Am. D. 627. In Byram v. Hunter, 36 Me. 217, where the indorser promised "to arrange with the company [the drawee], so that the draft should be paid," the court held there was a waiver of presentment and notice of dishonor. In Sigerson v. Mathews, 20 How. 496, 15 L. ed. 989, the court said:

"An unconditional promise by the endorser of a bill to pay it, or an acknowledgment of his liability, and knowledge of his discharge by the laches of the holder, will amount to implied waiver of due notice of a demand of the drawee, acceptor, or maker."

The assignments of error upon the charge are not well taken. The court, in stating that notice of dishonor may be waived, used the language of the statute above quoted. The quotation is assigned as error because there was no definition given of "the kind, character, or degree of proof necessary to establish such waiver." But the court attempted to give such definition in the paragraph of the charge following the quotation of the statute, namely this in substance, that if defendants expressly told plaintiff that they would pay her or if they conducted themselves in such a way as to lead her to believe that they still regarded themselves as liable, waiver could be found. That part of the charge wherein the character or degree of proof of waiver was defined was not challenged in the motion for new trial, nor here. No fault was found with the definition, imperfect though it was, at the trial; and it cannot be attacked under the guise of an assignment of error upon a correct recital of a statute applicable to the issue.

The fourth assignment of error, stating in substance that defendants by indorsing the certificate made themselves liable, vanishes when the sentence next following is read, viz: "But the defendants claim that they are not liable because there was no notice served upon them in this case." The court also told the jury that plaintiff could not recover unless she had established by a fair preponderance of the evidence that defendants had waived notice of dishonor. Obviously it was not reversible error to state to the jury the admitted fact that defendants knew of the closing of the bank about one month prior to the maturity of the certificate of deposit.

We find no error in the trial.

Order affirmed.